## O'MALLEY v. MORSE DRY DOCK & REPAIR CO.

(Supreme Court, Appellate Division, Second Department. March 1, 1912.)

MASTER AND SERVANT (§ 279*)—INJURY TO EMPLOYÉ—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action for injury to an employé, caused by a flying particle of steel, evidence *held* insufficient to show that escape of the particle was caused by negligence or incompetence of a fellow employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. § 279.*]

Woodward, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Hugh O'Malley against the Morse Dry Dock & Repair Company. Judgment dismissing the complaint, and plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

Hector A. Robichon (Edward M. O'Gorman, on the brief), for appellant.

M. L. Malevinsky, for respondent.

THOMAS, J. A particle of steel, the size of which was from a pinhead to a grain of rice, was taken from the plaintiff's right eye; but the sight was destroyed. At an earlier time the sight of the other eye had been destroyed by a piece of flying steel. So the man was blind. The plaintiff charged that the piece that entered his right eye was allowed to do so through the incompetency of a fellow servant, one Tierney. Plaintiff, an experienced man in defendant's service, while chipping and caulking in the hold of a ship some seven feet below, saw Tierney holding a chisel for clipping bolts in the hatch, and at the instant received a particle of steel in his eye. Tierney manipulated the chisel while one Eggleston, since deceased, was striking it. The latter was skillful. The absence of his working companion made a substitution necessary, and he asked the foreman for Tierney, saying:

"He is better than half the riveters around here; give me him."

So he was assigned. The foreman had not given him such work before, but had seen him riveting. This shows that Tierney's fellow servant, himself capable, regarded Tierney as competent to hold and adjust the chisel while he used the hammer, and the foreman was justified in relying upon the information and approbation. The foreman did not indicate whether Tierney should strike or hold, but assigned him to drive rivets. The evidence shows that the men come to the duty of clipping by stages, doing a little work here and there as opportunity offers, and so due skill is obtained. The record is very scant in its history of Tierney's work at driving. He testified that he—

"drove rivets all day, down there, * * * a week or so before the accident."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

He was hired as a heater boy, and was not a riveter. He said:

"I take every chance I can, every bit of driving. I followed it up to a certain extent."

A witness for plaintiff testified that Tierney's work was heating rivets, and spoke of his energy in availing himself of a chance to rivet; that he could chip and drive, although he never saw him chip, while one Duffy stated that Tierney was not competent to chip rivets. He was at the time about 20½ years of age and had been with the defendant several years. The plaintiff testified that the skilled riveter, holding the chisel in one hand and a hammer in the other, which seems to have been the manner of working, would do deftly intercept the clippings with his hammer as to prevent a chip of the least size from flying; but his witnesses, while commending the general efficacy of the intercepting hammer, concede the inability of the skilled holder of the chisel to prevent the escape of some chippings. From the evidence it appears that no skill would prevent so small a particle flying from the chisel, however skillful the handling of the hammer.

The plaintiff also claimed, and aided the contention with the evidence, that the chisel could be so held as to turn the clippings or shavings in whatever direction the operator would, and consequently away from neighboring workmen. This statement, within limits, seems reasonable, as does that of another witness, that the blow must be adapted to the condition of the chip as the work progresses. But Eggleston was striking the blow, and so far as appears the fault may have been with him, if there was fault. But, in view of the evidence that the operator with the chisel and hammer may not always prevent the escape of flying pieces of steel, the flying of a particle like that of a grain of rice would not indicate negligence or incompetency. In any case, the foreman could not be deemed guilty of negligence in allowing Eggleston to use Tierney as his co-worker, because it does not appear that the escape of so small a particle was due to any incompetency of Tierney.

The trial justice also considered that there was not sufficient evidence that the particle came from the rivet on which Tierney was working. There are two items of evidence to consider in this regard: (1) The plaintiff's evidence; (2) the opportunity for it to come from another source. Plaintiff testified that the chip hit him as he was looking up at Tierney, who was about seven feet above him; that it came from a heated rivet. But he later stated that he did not see it start, or on its course, but followed this by saying that he saw from where it started, but not on the way; but his evidence shows that he was not giving minute attention to the riveters, and the statement that he saw where the particle came from must be taken as an inference on his part that it did come from the place, because he felt it as he was looking, and because, in his judgment, there was no one so placed as to cause it to go in his direction, as others were outside the hatch.

I am not satisfied that the evidence does not indicate sufficiently that the particle came from the Eggleston-Tierney work, even though the plaintiff did not see it start, inasmuch as the evidence tends to negative the probability of an origin elsewhere. But upon the ground

134 N.Y.S.—3

that the escape of the particle indicates neither negligence nor incompetence on the part of Tierney, and that the foreman used reasonable care in designating him to the work upon the request and recommendation of Eggleston, I conclude that the judgment should be affirmed, with costs. All concur, except WOODWARD, J., who dissents.